UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

---

AFFILIATED COMPUTER SERVICES, INC.,

    Plaintiff,

v.

WILMINGTON TRUST COMPANY, solely in its capacity as Indenture Trustee on behalf of all Holders of Affiliated Computer Services, Inc.'s 5.20% Senior Notes Due 2015 and all Holders of Affiliated Computer Services, Inc.'s 4.70% Senior Notes Due 2010,

    Defendant.

Civil Action No. 3:06-CV-1770D
ECF

---

BRIEF IN SUPPORT OF
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Dated: March 27, 2007

    ZELLE, HOFMANN, VOELBEL, MASON & GETTE LLP
    Thomas H. Cook, Jr.
    State Bar No. 00783869
    Todd M. Tippett
    State Bar No. 24046977
    1201 Main Street, Suite 3000
    Dallas, TX 75202-3975
    Telephone: (214) 742-3000
    Facsimile: (214) 760-8994
    **ATTORNEYS FOR DEFENDANT**

OF COUNSEL:
ANTHONY OSTLUND & BAER, P.A.
Jeffrey I. Ross
John Orenstein
Steven M. Pincus
3600 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 349-6969
Facsimile: (612) 349-6996

## **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................1

II. FACTUAL BACKGROUND .........................................................................................3

      A.    The Indenture Trustee Represents the Interests of the Holders of Two Series of Notes ...............................................................................................3

      B.    ACS failed to make required SEC filings ......................................................3

      C.    The Indenture required ACS to provide its SEC Filings to the Trustee in a timely manner ........................................................................................4

      D.    By failing to make its SEC filings, ACS defaulted under the Indenture .......5

      E.    Notices of Default and Acceleration were provided per the terms of the Notes ..........................................................................................................6

            a.    The 5.20% Notes ...............................................................................6

            b.    The 4.70% Notes ...............................................................................7

      F.    ACS Breached Its Obligations Under Section 6.02 By Failing To Make An Immediate Payment ......................................................................8

III. ARGUMENT ..................................................................................................................8

      A.    ACS BREACHED SECTION 4.03(a) OF THE INDENTURE BY FAILING TO PROVIDE THE TRUSTEE WITH ITS REQUIRED SEC FILING ............8

      B.    ACS BREACHED SECTION 6.02 OF THE INDENTURE BY FAILING TO PAY ALL PRINCIPAL AND INTEREST DUE *IMMEDIATELY*. ACS MUST BE REQUIRED TO ACCELERATE ...............................................13

IV. CONCLUSION ............................................................................................................14

# TABLE OF AUTHORITIES

**Speech**

By SEC Chairman Christopher Cox, July 20, 2006 ................................................................. 1, 2

**Statutes**

15 U.S.C. § 77bbb (2006) ............................................................................................................. 5

15 U.S.C. § 77nnn (2006) ....................................................................................................... 4, 10

15 U.S.C. § 77nnn(a) (2006) ..................................................................................................... 5, 9

15 U.S.C. § 78m(a) (2006) ........................................................................................................... 4

Securities Exchange Act of 1934 Section 13 ............................................................................ 3, 4

Securities Exchange Act of 1934 Section 15(d) ....................................................................... 3, 4

**Rules**

Fed. R. Civ. P. 56(c) ..................................................................................................................... 8

**Cases**

*Bank of New York v. BearingPoint, Inc.* 13 Misc. 3d 1209(A), 824 N.Y.S.2d 752, 2006 WL 2670143 (Sup. Ct. N.Y. Co. Sept. 18, 2006) ................................................................ 9, 10, 13

*Bank of New York v. Tri Polyta Finance B.V.*, No. 600169/06, 2003 WL 1960587 (S.D.N.Y. April 25, 2003) ......................................................................................................................... 13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................................... 8

*Creighton v. Milbauer*, 594 N.Y.S.2d 185, (N.Y. App. Div. 1993) ........................................ 11

*Key Int'l. Mfg. Inc. v. Stillman*, 103 A.D.2d 475, 477, 480 N.Y.S.2d 528 (2d Dep't 1984), *modified on other grounds*, 66 N.Y.2d 924, 489 N.E.2d 764 (1985) ..................................... 13

*L&B 57th Street, Inc. v. E.M. Blanchard, Inc.*, No. 95 CIV. 3450 (HB), 1997 WL 30945 (S.D.N.Y. Jan. 27, 1997) ........................................................................................................ 13

*Semi-Tech Litigation, LLC v. Bankers Trust Co.*, 450 F.3d 121 (2d Cir. 2006) ................ 11, 12

*Semi-Tech Litig., LLC v. Bankers Trust Co.*, 353 F. Supp. 2d 460 (S.D.N.Y. 2005) ............... 11

*Spanos v. Skouras Theatres Corp.*, 364 F.2d 161 (2d Cir. 1966) ...................................... 11, 12

*Spodek v. Park Property Development Assoc.*, 279 A.D.2d 467, 719 N.Y.S.2d 109 (2d Dep't 2001) .................................................................................................................. 13

*Stern v. Gepo Realty Corp.* 289 N.Y. 274 (1942). ........................................................ 11

*Transportation Displays Inc. v. Winston*, 870 F. Supp. 746 (S.D.N.Y. 1994) .............. 13

*Wechsler v. Hunt Health Systems, Ltd.*, 330 F. Supp. 2d 383 (S.D.N.Y. 2004) ........... 13

**Treatises**

CORBIN ON CONTRACTS ................................................................................................ 11

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

---

| | |
|---|---|
| AFFILIATED COMPUTER SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> WILMINGTON TRUST COMPANY, solely in its capacity as Indenture Trustee on behalf of all Holders of Affiliated Computer Services, Inc.'s 5.20% Senior Notes Due 2015 and all Holders of Affiliated Computer Services, Inc.'s 4.70% Senior Notes Due 2010. <br><br> Defendant. | Civil Action No. 3:06-CV-1770D <br> ECF |

---

## BRIEF IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Wilmington Trust Company files this Brief in Support of its Motion for Summary Judgment against Plaintiff Affiliated Computer Services, Inc. and in support respectfully shows as follows:

### I.
### INTRODUCTION

This case arises out of the practice of backdating employee stock options: that is, in the words of SEC Chairman Christopher Cox, "selecting a grant date for an option award that's earlier than when the award is actually made."[1] Public companies that engage in this practice and conceal it from the holders of their securities commit a grave violation of law and ethics. As Chairman Cox put it:

---

[1] Speech by SEC Chairman: Remarks at Press Conference on Actions against Brocade Communications Systems, July 20, 2006, available at http://www.sec.gov/news/speech/2006/spch072006cc.htm.

---

BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT        Page 1

> [O]ptions backdating strikes at the heart of investor confidence in our capital markets. It deceives investors and the market as a whole about the financial health of companies that cheat in this way. It understates a company's compensation expenses and overstates the company's income. *In many cases, it makes a hash of the financial statements.* It is poisonous to an efficient marketplace.[2] [Emphasis added.]

Affiliated Computer Services, Inc. ("ACS"), in the face of SEC, U.S. Attorney's Office and internal investigations concerning stock option backdating, failed to file its annual report (Form 10-K) with the SEC when due in September 2006. This was a default under an indenture dated June 6, 2005 (the "Indenture"), relating to the issuance of $500 million in senior notes (collectively the "Notes"). (*See* Ex. 1, Appendix pp. 5-61). ACS filed a declaratory judgment action on September 26, 2006, seeking to establish that its failure to file the annual report was not a default. Subsequently, ACS failed to file its quarterly report (Form 10-Q) for its first fiscal quarter.

On November 26, the CEO and CFO of ACS resigned, due to their direct role in backdating stock option grants. (Ex. 2, Appendix p. 63; Ex. 3, Appendix pp. 117-18). At that time, the company announced that since 1994, because of the backdating practice, its expenses had likely been understated by over $50 million. (Ex. 2, Appendix p. 63; Ex. 3, Appendix pp. 75-76, 117-18). Thus, noteholders learned that not only were they without the current financial statements to which they were entitled, but the prior statements they received had been materially false.

The Indenture Trustee, Wilmington Trust Company, now moves for summary judgment against ACS on its declaratory judgment claims and in favor of the noteholders on the counterclaims for damages brought on their behalf. The fact that ACS failed to file its annual and quarterly reports when due is undisputed. By late January 2007, when the filings belatedly

---

[2] *Id.*

BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT                         Page 2

were made, the breach of the company's covenant to provide timely information to noteholders had already occurred (and had, by virtue of the concealed backdating, been occurring in one form or another all along). There was an Event of Default, followed by acceleration. As a recent case on substantially identical indenture language has held, the Indenture Trustee is entitled to relief.

## II.
## FACTUAL BACKGROUND

### A. THE INDENTURE TRUSTEE REPRESENTS THE INTERESTS OF THE HOLDERS OF TWO SERIES OF NOTES.

There are two series of Notes, both issued in a public offering on June 6, 2005. $250 million in 4.70% notes due 2010 (the "4.70% Notes") were issued under the Indenture as supplemented by the First Supplemental Indenture (Ex. 4, Appendix pp. 402-17). An equal amount of 5.20% notes due 2015 (the "5.20% Notes") were issued under the Indenture as supplemented by the Second Supplemental Indenture (Ex. 5, Appendix pp. 419-34).

Under the Indenture, the Indenture Trustee is charged with protecting the interests of holders when an Event of Default occurs. (*See* Ex. 1 at Section 7.01(a), Appendix p. 42).

### B. ACS FAILED TO MAKE REQUIRED SEC FILINGS.

ACS is publicly held and trades on the New York Stock Exchange under the ticker symbol "ACS". Accordingly, ACS must make annual and quarterly filings with the SEC. *See* Sections 13 and 15(d) of the Securities Exchange Act of 1934 (the "Exchange Act"). ACS failed to make the requisite Form 10-K filing for its fiscal year ending June 30, 2006. The filing was due September 13, 2006. (Ex. 6, Appendix p. 439). In its Notification of Late Filing, ACS explained that its failure to file its 10-K related to an ongoing internal investigation into stock option grant practices over the prior eight years, which also were under investigation by the SEC and the U.S. Attorney's Office. (*Id.*) ACS "[did] not expect the independent auditors to be in a

position to complete the audit of the company's financial statements until the internal investigation is complete." (*Id.*)

Subsequently, and for the same reasons, ACS failed to make a timely filing of its Form 10-Q for the period ending September 30, 2006 (Ex. 7, Appendix p. 444).

C.  **THE INDENTURE REQUIRED ACS TO PROVIDE ITS SEC FILINGS TO THE TRUSTEE IN A TIMELY MANNER.**

The Indenture contains a covenant that required ACS to provide the Indenture Trustee with copies of its annual and quarterly reports within fifteen days of filing them with the SEC. Specifically, Section 4.03 of the Indenture, titled "SEC Reports; Financial Statements," states:

> (a) The Company shall file with the Trustee, within 15 days after it files the same with the SEC, copies of the annual reports and the information, documents and other reports (or copies of those portions of any of the foregoing as the SEC may by rules and regulations prescribe) that the Company is required to file with the SEC pursuant to Section 13 or 15(d) of the Exchange Act. The Company shall also comply with the provisions of TIA 314(a).

(Ex. 1, Appendix p. 33). The statutory references illuminate both the nature and the purpose of the covenant. Section 13 of the Exchange Act requires public companies to file annual and quarterly reports with the SEC under rules it prescribes "as necessary or appropriate for the proper protection of investors and to assure fair dealing in the security." 15 U.S.C. § 78m(a) (2006). Section 314(a) of the Trust Indenture Act of 1939 (the "TIA") -- with which the Company in no uncertain terms "shall comply" -- provides that an obligor must file with the indenture trustee copies of the annual and quarterly reports "which such obligor is required to file with the Commission pursuant to section 13 or section 15(d) of the [Exchange Act.]" 15 U.S.C. § 77nnn. Like the referenced Exchange Act provision, the TIA section states on its face that its purpose is investor protection: "The rules and regulations hereunder prescribed in this

subsection shall be such as are *necessary or appropriate in the public interest or for the protection of investors.*" 15 U.S.C. § 77nnn(a) (emphasis added).

Thus, Section 4.03 expressly required ACS to make the information required of public companies available to Noteholders per SEC regulations (*See* Ex. 1, Appendix p. 33). The purpose, while self-evident, is best articulated by the relevant portion of TIA Section 302, which recites the evils Congress intended to address:

> (a) the national public interest and the interest of investors in notes ... which are offered to the public, are adversely affected –
>
> * * *
>
> (4) when the obligor is not obligated to furnish to the trustee under the indenture and to such investors adequate current information as to its financial condition, and as to the performance of its obligations with respect to the securities outstanding under such indenture; ....

15 U.S.C. § 77bbb.

Eventually, on January 23, 2007, ACS filed both its 10-K and first quarter 10-Q. The 10-K revealed that prior to ACS's internal investigation, "the term 'backdating' was readily applicable to our option grant process." (Ex. 3, Appendix pp. 118-19). As a result, the company's financial statements from 1994 through May 2006 had failed to record $51.2 million of expense. (Ex. 3, Appendix pp. 75-76). It also recorded an additional tax liability in the amount of $37.9 million. (Ex. 3, Appendix pp. 124-25) A timely, accurate 10-K would have disclosed these items and other basic financial information. In other words, ACS deprived the Noteholders of material information necessary to make informed judgments about their investment.

D.   **BY FAILING TO MAKE ITS SEC FILINGS, ACS DEFAULTED UNDER THE INDENTURE.**

A "Default" under the Indenture is "any event, act or condition that is, or after notice or the passage of time or both would be, an Event of Default" (Ex. 1 at Section 1.01, Appendix p.

---

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**          **Page 5**

11). Section 6.01(3) defines those events, acts or conditions to include failure to comply with the Section 4.03 filing covenant, provided that notice has been given by the Indenture Trustee or holders of at least 25% of the outstanding principal amount of a series of the Notes. (Ex. 1, Appendix p. 36). While the Indenture refers the reader to the Supplemental Indentures to find any cure period (Ex. 1, Appendix pp. 37-38), in fact the Supplemental Indentures contain none (Ex. 4, Appendix pp. 402-17; Ex. 5, Appendix pp. 419-34).[3] Thus, to ripen into an Event of Default, the failure to file in this case needed only to be the subject of a written Notice of Default to the company. (Ex. 1 at Section 6.01, Appendix pp. 37-38)

E.  **NOTICES OF DEFAULT AND ACCELERATION WERE PROVIDED PER THE TERMS OF THE NOTES.**

   1.  **The 5.20% Notes**

On September 22, 2006, Cede & Co., the registered holder of record of the 5.20% Notes, acting on behalf of beneficial owners of more than 25% of the outstanding principal of those Notes, delivered a Notice of Default to ACS and the indenture trustee at the time, Bank of New York (Ex. 8, Appendix pp. 447-51).[4] The Notice duly complied with the Indenture's Default notice provision: it was titled "Notice of Default"; it specified that the Default was based on the failure to file a Form 10-K with the SEC and furnish it to the trustee, citing Section 4.03; and it called for ACS to remedy the Default. (*See* Ex. 1 at Section 6.01, Appendix pp. 37-38). Bank of New York faxed a substantially similar "Notice of Default" on the 5.20% Notes to ACS on September 29 (Ex. 9, Appendix pp. 453-54).

Under the Indenture, an Event of Default of this kind gives rise to a right to accelerate: that is, to "declare the principal of ... and all accrued and unpaid interest on all then outstanding

---

[3] A 15-day cure period for certain covenant defaults is provided in each Supplemental Indenture, but by its terms it applies only when the default is under other debt and has resulted in acceleration. (Ex. 4 at Section 401, Appendix pp. 412-13; Ex. 5 at Section 401, Appendix pp. 429-30).

[4] Wilmington Trust Company succeeded Bank of New York as Indenture Trustee on December 29, 2006.

---

Securities of that series ... to be due and payable." (Ex. 1 at Section 6.02, Appendix p. 38). Once again, the right may be exercised by the Indenture Trustee or holders of the requisite 25% or more of the series. The effect of such a declaration is to make the principal and interest "due and payable immediately." (*Id.*)

Accordingly, Cede & Co., acting on behalf of the same beneficial owners, delivered a Demand to Accelerate the 5.20% Notes on September 29 (Ex. 10, Appendix pp. 456-461). The Demand "declare[d] the principal amount ... and accrued and unpaid interest, if any, on the 5.20% Notes to be due and payable immediately" and demanded immediate payment (*Id.*) Bank of New York faxed its "Demand to Accelerate 5.20% Notes" to ACS on October 6 (Ex. 11, Appendix pp. 463-64).

### 2.   The 4.70% Notes

Under the Indenture, the default and acceleration notices for the 5.20% Notes were effective as to the 4.70% Notes as well.[5] Nevertheless, on October 5 and 10, Cede & Co. delivered three Notices of Default to ACS and Bank of New York on behalf of beneficial holders of a combined total of more than 25% of the outstanding 4.70% Notes. These were in all relevant respects the same as the Notices of Default on the 5.20% Notes and compliant with the Indenture requirements (Exs. 12-14, Appendix pp. 465-74). The Notices of Default were followed by acceleration demands in three letters that Cede & Co. delivered to ACS and Bank of New York November 2 through November 16, on behalf of the beneficial holders, which declared all principal and interest immediately due and payable and demanded immediate payment (Exs. 15-17, Appendix pp. 475-85).

---

[5]   A Default ripens into an Event of Default upon notification by the requisite number of holders of "the then outstanding Securities so affected" if "outstanding Securities of other series are affected by that Default" (Ex. 1, Appendix p. 37). The acceleration language contains the same language (*Id.* at Appendix p. 29).

---

BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT                    Page 7

F.  **ACS BREACHED ITS OBLIGATIONS UNDER SECTION 6.02 BY FAILING TO MAKE AN IMMEDIATE PAYMENT.**

The effect of acceleration was to make the Notes "due and payable immediately" (Ex. 1 at Section 6.02, Appendix p. 38). ACS, however, failed to honor the acceleration notices, thereby breaching its express obligations under Section 6.02. Had ACS honored the acceleration clause, it would have immediately paid off the Noteholders at par, or $1,000 per Note for 500,000 Notes.

## III.
## ARGUMENT

Summary judgment is appropriately granted when there is no dispute regarding a material fact and when one party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The Indenture is governed by the law of New York. (Ex. 1 at Section 10.09, Appendix p. 59).

A.  **ACS BREACHED SECTION 4.03(a) OF THE INDENTURE BY FAILING TO PROVIDE THE TRUSTEE WITH ITS REQUIRED SEC FILING.**

ACS does not deny that it has a legal obligation to make SEC filings. It denies, however, that this is an obligation to Noteholders under the Indenture. Indeed, this is the sole ground on which ACS seeks declaratory relief:

> Because ACS has not yet filed its annual report on Form 10-K for the fiscal year ended June 30, 2006, ACS is not yet obligated to provide copies of its Form 10-K for the fiscal year ended June 30, 2006 to the Trustee under either Section 4.03(a) of the Indenture or Section 314(a) of the TIA. Accordingly, ACS is not in default under the Indenture ….

First Amended Complaint, ¶ 24. ACS's position, in other words, is that having breached its statutory obligations, it has excused itself from its contractual obligations. This position, absurd on its face, is directly contrary to the language and purpose of its covenant; furthermore, the argument has been categorically rejected by the only New York court to consider the issue.

The language of Section 4.03 is unequivocal. (*See* Ex. 1, Appendix p. 33). It says that the company "shall ... comply" with TIA Section 314(a), which in turn provides that the company "shall file" with the trustee the reports that it "is required to file with the Commission" under the Exchange Act and SEC rules thereunder. 15 U.S.C. § 77nnn(a). And the mandate to comply with the TIA immediately follows this sentence:

> The Company *shall file* with the Trustee, within 15 days after it files the same with the SEC, copies of the annual reports and the information, documents and other reports (or copies of those portions of any of the foregoing as the SEC may by rules and regulations prescribe) that the Company *is required to file* with the SEC pursuant to Section 13 or 15(d) of the Exchange Act. [Emphasis added.]

(Ex. 1, Appendix p. 33). It would be difficult to find more ways to state that an act is mandatory. ACS was "required to file with the SEC" its annual report, and in turn it "shall file" that report with the Indenture Trustee. The expressly incorporated TIA obligation serves to eliminate any doubt that there is nothing optional about the requirement to make this information available to Noteholders.

The only court to decide this issue – a New York court applying New York law – construed virtually identical language in a manner that roundly rejected exactly the claim ACS makes here. In *Bank of New York v. BearingPoint, Inc.*, 13 Misc. 2d 1209(A), 824 N.Y.S.2d 752, 2006 WL 2670143 (Sup. Ct. N.Y. Co. Sept. 18, 2006), the Court granted summary judgment to Bank of New York, holding that BearingPoint defaulted under the provisions of a bond indenture when it failed to provide Bank of New York (the indenture trustee) with a Form 10-K. The indenture provision read:

> The Company shall file with the Trustee, within 15 days after it files such annual and quarterly reports, information, documents and other reports with the SEC, copies of its annual report and of the information, documents and other reports (or copies of those portions of any of the foregoing the SEC may by rules and regulations prescribe) which the Company is required to file with the SEC pursuant to Section 13 or 15(d) of the Exchange Act. The Company shall comply with the provisions of TIA 314(a).

*Id.* at *2 (Ex. 18, Appendix p. 488). The company, like ACS, argued that "it did not breach the Indenture when it failed to provide the Indenture Trustee with timely SEC filings" because "it had no independent obligation under the indenture to make any SEC filing, at all." *Id.* at *7 (Ex. 18, Appendix p. 491).

The Court first noted that the covenant language "incorporates Section 13 of the [Exchange Act]," that the language "expressly referenced" the TIA requirement "to provide the annual and quarterly reports to the Trustee," and that the covenant – as in our case – "essentially adopts the exact language of Section 314(a)(1) of the TIA, which obligates an issuer of bonds or notes to provide the Indenture Trustee with its quarterly and annual reports (15 U.S.C. § 77nnn)." *Id.* at *3 (Ex. 18, Appendix p. 488). The company's position therefore was contrary to both the language and the obvious purpose of the covenant (Section 5.02 in BearingPoint's indenture):

> This argument ignores the clear import of § 5.02 and the TIA. Under BearingPoint's interpretation of the relevant Indenture provision, BearingPoint's obligation to provide information to the Trustee was contingent on whether or not it chose to file with the SEC. Section 5.02, however, unambiguously obligates BearingPoint to make the required SEC filings and to provide copies of them to the Trustee ... BearingPoint's *tortured parsing* of this provision to read the section as making SEC filings optional under the Indenture, *vitiates the clear purpose* of the Indenture to provide information to the investors so that they may protect their investment. This proposed construction would defy the clear intentions of the parties and does not comport with the straightforward and unambiguous intent of the provision.

*Id.* at *7 (Ex. 18, Appendix p. 491) (emphasis added). ACS engages in the same "tortured parsing" of the language of its covenant as BearingPoint did, alleging that its obligation was entirely illusory: ACS, the company contends, could choose whether to make required SEC filings, and only if it chose to do so did it have to provide any information to the Noteholders. One can arrive at this odd result only by focusing obsessively on the timing provision of Section

4.03 – that is, the 15-day period given to ACS between making the public filing and providing the information to the Indenture Trustee. This procedural clause is just that, a timing clause and nothing more. It does not override the stated requirement that ACS make timely SEC filings. Nothing about Section 4.03 suggests that ACS has the right to disable itself from its obligation to provide basic, critical information to public holders of $500 million of its Notes.

In substance, ACS claims that the condition precedent to its obligation to provide timely annual and quarterly reports to the Indenture Trustee did not occur. But the failure of the condition was of ACS's own making. It is well settled in New York that "a party may not frustrate the performance of an agreement by bringing about the failure of a condition precedent." *Creighton v. Milbauer*, 594 N.Y.S.2d 185, 187-88 (N.Y. App. Div. 1993). Stated otherwise, "one may not take advantage of a condition precedent, the performance of which he himself has rendered impossible." *Stern v. Gepo Realty Corp.*, 289 N.Y. 274, 277 (1942); *Spanos v. Skouras Theatres Corp.*, 364 F.2d 161, 169 (2d Cir. 1966) (en banc) (Friendly, J.) ("'One who unjustly prevents the performance or the happening of a condition of his own promissory duty thereby eliminates it as such a condition. He will not be permitted to take advantage of his own wrong, and to escape from liability for not rendering his promised performance by preventing the happening of the condition on which it was promised'") (quoting 3A Arthur L. Corbin, *Corbin On Contracts* § 767, at 540 (1960)).

The recent decision of the Court of Appeals for the Second Circuit in *Semi-Tech Litigation, LLC v. Bankers Trust Co. (In re Bankers Trust Co.)*, 450 F.3d 121 (2d Cir. 2006) is instructive. In that case, Bankers Trust was the trustee under an indenture for a 1993 note offering by Semi-Tech Corp. that raised $300 million. The plaintiff argued, among other things, that Bankers Trust violated its duty under Section 315(b) of the TIA to give notice to the

Noteholders "of all defaults known to the trustee" when it received officers' and accountant's certificates that did not conform to the requirements of the indenture. The District Court reasoned that because Bankers Trust breached its duty under Section 315(a) of the TIA by failing to examine the certificates for nonconformity with the indenture, the nonconformities were not "known" to Bankers Trust, and therefore, Bankers Trust did not violate Section 315(b) in failing to give notice to the Noteholders of those defaults. *Semi-Tech Litig., LLC v. Bankers Trust Co.*, 353 F. Supp. 2d 460, 479-80 (S.D.N.Y. 2005).

The Second Circuit disagreed. It observed that Bankers Trust was under a statutory and contractual duty to examine the certificates furnished by Semi-Tech to determine whether they conformed to the requirements of the Indenture. "That duty was expressly imposed by TIA § 315(a), and under Indenture § 601 [Bankers Trust] undertook 'the duties and responsibilities of the Trustee ... as provided by the Trust Indenture Act.'" *Semi-Tech*, 450 F.3d at 128. The Second Circuit held that because Bankers Trust "had a duty under § 315(a) to examine the certificates, its failure to do so cannot excuse its failure to comply with the duty under § 315(b) to take action with respect to known defaults." *Id.* at 127. The Court reasoned that:

> [Bankers Trust] did not know of Semi-Tech's defaults because it failed to take the steps it had promised it would take to learn of defaults. Its failure to fulfill its affirmative duty to inspect the certificates "unjustly prevent[ed] the performance" of its duty to give notice of the nonconformities. [Bankers Trust] is "not ... permitted to take advantage of [its] own wrong."

*Id.* at 129 (quoting *Spanos*, 364 F.2d at 169).

The same reasoning applies here. ACS cannot take advantage of its failure to fulfill its statutory and contractual obligation to file timely reports with the SEC, occasioned by its own practices with respect to stock option grants, to argue that it has not breached its obligation to

provide the Trustee with the reports. *See BearingPoint, Inc.*, 2006 WL 2670143 at *8 (Ex. 18, Appendix p. 492).

B.  **ACS BREACHED SECTION 6.02 OF THE INDENTURE BY FAILING TO PAY ALL PRINCIPAL AND INTEREST DUE *IMMEDIATELY*. ACS MUST BE REQUIRED TO ACCELERATE.**

The default mechanisms of the Indenture were fully satisfied by the default letters and acceleration notices described above. Consequently, under Section 6.02 of the Indenture, ACS was obligated to accelerate and immediately pay all principal and accrued interest. Acceleration clauses are common and are enforced according to their terms by New York courts. *See Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 423-24 (S.D.N.Y. 2004); *Bank of New York v. Tri Polyta Fin. B.V.*, No. 600169/06, 2003 WL 1960587, *4 (S.D.N.Y. April 25, 2003) (Ex. 19, Appendix pp. 497-98); *Key Int'l Mfg., Inc. v. Stillman*, 103 A.D.2d 475, 477, 480 N.Y.S.2d 528, 530 (2d Dep't 1984), *modified on other grounds*, 66 N.Y.2d 924, 489 N.E.2d 764 (1985).

The Indenture Trustee also is entitled to an award of prejudgment interest. Prejudgment interest at the rate of 9% is a matter of right in actions at law in New York, such as for breach of contract. *Transp. Displays, Inc. v. Winston*, 870 F. Supp. 74, 78 n.6 (S.D.N.Y. 1994); N.Y. C.P.L.R. §§ 5001, 5004. This statutory rate applies in instances where there has been a default on a promissory note. *Spodek v. Park Prop. Dev. Assocs.*, 279 A.D.2d 467, 468, 719 N.Y.S.2d 109, 110 (2d Dep't 2001). Courts in some cases have applied the rate on the note, rather than the statutory rate, but only where the former is *higher*. *E.g., L&B 57th St., Inc. v. E.M. Blanchard, Inc.*, No. 95 CIV. 3450 (HB), 1997 WL 30945, *2 (S.D.N.Y. Jan. 27, 1997) ("Prejudgment interest is available in breach of contract actions and parties are free to contract for a rate higher than the statutory rate.") (Ex. 20, Appendix p. 502). Of course, utilizing a contract rate for

prejudgment interest which is lower than the statutory rate would only encourage a borrower to breach. Thus, prejudgment interest at 9% should be applied commencing from the dates of breach, September 29, 2006 (the 5.20% notes) and November 15 (the 4.70% Notes).

## IV.
## CONCLUSION

For the above stated reasons, the Indenture Trustee respectfully requests this Court to grant its motion for summary judgment. ACS breached Section 4.03 of the Indenture by failing to provide the Indenture Trustee with a required timely SEC filing. ACS must be ordered to accelerate and immediately pay all principal and accrued and unpaid interest, and any Additional Interest, due on the Notes, plus prejudgment interest at 9%.

Dated: March 27, 2007

                        Respectfully submitted,

                        ZELLE, HOFMANN, VOELBEL, MASON & GETTE LLP

                        /s/ Todd M. Tippett
                        Thomas H. Cook, Jr.
                        State Bar No. 00783869
                        Todd M. Tippett
                        State Bar No. 24046977
                        1201 Main Street, Suite 3000
                        Dallas, TX  75202-3975
                        Telephone:  (214) 742-3000
                        Facsimile:  (214) 760-8994
                        **ATTORNEYS FOR DEFENDANT**

Of Counsel:
**ANTHONY OSTLUND & BAER, P.A.**
Jeffrey I. Ross
John Orenstein
Steven M. Pincus
3600 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402
Telephone:  (612) 349-6969
Facsimile:  (612) 349-6996

---

## CERTIFICATE OF SERVICE

This is to certify that service of the foregoing has been accomplished on all known filing users through the ECF filing system on this 27th day of March, 2007.

                                        /s/ Todd M. Tippett
                                      Todd M. Tippett

2064471v1