# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 16, 2009

No. 08-10235

Charles R. Fulbruge III
Clerk

AFFILIATED COMPUTER SERVICES INC

Plaintiff - Appellee

v.

WILMINGTON TRUST COMPANY, solely in its capacity as Indenture Trustee on behalf of all Holders of Affiliated Computer Services Incs's 5.20% Senior Notes Due 2015 and all Holders of Affiliated Computer Services Inc's 4.70% Senior Notes Due 2010

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, Chief Judge, WIENER and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Affiliated Computer Services, Inc. ("ACS") brought a declaratory judgment action against The Bank of New York Trust Company ("Bank of New York"), later substituted by Wilmington Trust Company ("Wilmington Trust"), seeking a determination that ACS was not in breach of an indenture agreement ("Indenture") entered into between ACS and the Bank of New York. Wilmington Trust filed a counterclaim for a declaratory judgment that ACS breached the Indenture by failing timely to file a Form 10-K with the Securities and Exchange

No. 08-10235

Commission ("SEC"), that ACS breached its covenant of good faith and fair dealing, and that ACS violated § 314(a) of the Trust Indenture Act of 1939 ("TIA"). The parties filed cross-motions for summary judgment, and the district court granted ACS's motion and entered judgment in favor of ACS. For the following reasons, we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts are undisputed in this case. On June 6, 2005, ACS entered into the Indenture and supplemental indentures pursuant to which ACS issued two sets of notes, one at 5.20% and another at 4.70%. The notes issued at 5.20%, which are due on June 1, 2015, are the only notes relevant to this appeal. ACS timely made semi-annual interest payments on the notes.

The notes were publicly traded throughout the relevant time period, and thus, ACS was required to file reports with the SEC pursuant to Sections 13 and 15(d) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78m, 78o(d). ACS's Form 10-K for 2006 was due to be filed with the SEC on September 13, 2006. On September 14, 2006, ACS filed a Notification of Late Filing explaining that it was unable timely to file its 10-K because of an ongoing internal investigation into its historical stock option practices. ACS eventually filed its 10-K with the SEC on January 23, 2007, and two days later, it delivered a copy of the 10-K to Wilmington Trust.

The Indenture contains the following "Event of Default", among others: "[ACS] fails to comply with any of its other covenants or agreements in, or provisions of, the Securities of that series or this Indenture . . . ." Indenture § 6.01(3). In the Event of Default, the trustee may accelerate the notes by written notice and declare the principal and interest due and payable immediately. Indenture § 6.02. On September 22, 2006, Cede & Co., acting on behalf of beneficial owners, delivered a Notice of Default to ACS and The Bank of New

No. 08-10235

York, the trustee at the time. On September 29, 2006, the Bank of New York delivered a similar Notice of Default to ACS, and on October 5, 2006, other holders of notes forwarded default notices to ACS. The notices asserted that ACS defaulted on the Indenture by failing timely to file the Form 10-K. Cede & Co. delivered a Demand to Accelerate Notes on September 29, 2006, and the Bank of New York submitted a similar demand on October 6, 2006. Both demands declared the principal and interest due and payable immediately. ACS did not honor either acceleration notice.

ACS responded to the notice of default by filing a declaratory judgment action on September 26, 2006, seeking a determination that it was not in default under the Indenture. The Bank of New York resigned as Indenture Trustee and Wilmington Trust succeeded as trustee and defendant in the declaratory judgment action. Wilmington Trust filed a counterclaim against ACS, bringing claims for breach of contract based on §§ 4.03 and 6.02 of the Indenture, breach of the covenant of good faith and fair dealing, and for violation of § 314(a) of the TIA.

> Section 4.03 of the Indenture provides in pertinent part as follows:
>
> [ACS] shall file with the Trustee, within 15 days after it files the same with the SEC, copies of the annual reports and the information, documents and other reports (or copies of those portions of any of the foregoing as the SEC may by rules and regulations prescribe) that [ACS] is required to file with the SEC pursuant to Section 13 or 15(d) of the Exchange Act. [ACS] shall also comply with the provisions of TIA 314(a).

Indenture § 4.03(a). Section 314(a) of the TIA similarly requires an issuer of bonds to

> file with the indenture trustee copies of the annual reports and of the information, documents, and other reports (or copies of such portions of any of the foregoing as the Commission may by rules and regulations prescribe) which such obligor is required to file with the Commission . . . .

3

15 U.S.C. § 77nnn(a).

The parties filed cross-motions for summary judgment. The district court addressed the following issue: whether the Indenture requires ACS to timely file with the trustee the reports that it files with the SEC, even if the SEC filings are themselves untimely. The court agreed with ACS's interpretation that the provisions merely require ACS timely to file with the trustee the reports that ACS has filed with the SEC. The parties also briefed whether acceleration of the notes was proper. The district court did not address those arguments because the court found that ACS was not in default. From the judgment in favor of ACS, Wilmington Trust timely appealed.

## II.   STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*. *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 386 (5th Cir. 2007). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Legal questions of statutory construction and contract interpretation are also reviewed *de novo*. *S.D. ex rel Dickson v. Hood*, 391 F.3d 581, 585 (5th Cir. 2004); *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004). The Indenture's choice-of-law provision specifies that it is to be governed and construed by New York law, while interpretation of the TIA is a matter of federal law. *See Henderson v. Stalder*, 407 F.3d 351, 356 (5th Cir. 2005).

## III.   DISCUSSION

Wilmington Trusts argues that ACS failed timely to file its annual report with the SEC and, after missing that filing, failed timely to file an annual report

with the trustee. Wilmington Trust argues that this was a breach of the Indenture and in violation of § 314(a) of the TIA, and it asserts three reasons why ACS and the district court's interpretations to the contrary are wrong. First, Wilmington Trust argues that § 314(a) of the TIA requires ACS to provide the trustee with copies of reports that it is "required to file" with the SEC, and it does not limit the requirement to only reports that are actually filed. Second, Wilmington Trust contends that ACS's failure timely to file reports with the SEC was the failure of a condition precedent to its obligation to the trustee, and it cannot take advantage of its failure to fulfill a condition precedent to argue that it has not breached its obligation to provide the trustee with the required reports. Finally, Wilmington Trust relies on the purpose of the Indenture to argue that ACS was required to file with the trustee even though it did not timely file with the SEC. We will address each of these arguments.

A. *Section 314(a) of the TIA*

Section 314(a) of the TIA requires an issuer of bonds to file with the trustee copies of the annual reports which it is "required to file" with the SEC. *See* 15 U.S.C. § 77nnn(a). The Indenture also requires compliance with § 314(a), and ACS does not dispute that it was required to comply with the provision of the section. The dispute turns on the interpretation of § 314(a), which is a matter of first impression for this court. Wilmington Trust contends that § 314(a) requires ACS to provide copies of the reports it is required to file with the SEC regardless of whether ACS actually filed the reports. ACS argues that § 314(a) requires that it only file with the trustee the reports that it has in fact filed with the SEC. The district court held that § 314 obligates ACS to file with Wilmington Trust "copies of the reports and documents that ACS files with the SEC, but § 314(a) does not require that ACS file anything with the SEC."

After the district court entered its judgment, the Eighth Circuit addressed this same issue in *UnitedHealth Group Inc. v. Wilmington Trust Co.*, 548 F.3d

No. 08-10235

1124 (8th Cir. 2008). In *UnitedHealth*, the court held that "TIA § 314(a) requires only that debt issuers forward to their trustees copies of such reports as are actually filed with the SEC." *Id.* at 1131. The court explained that "the TIA's reference to §§ 13 and 15(d) of the Exchange Act merely identifies *which* reports must eventually be forwarded to the trustee. It does not independently impose any particular timetable for filing nor does it incorporate the SEC's regulatory deadlines." *Id.* at 1130.

Wilmington Trust argues that SEC Rule 19a-1 and circumstances surrounding it demonstrate that the SEC has interpreted the TIA to require timely filing of SEC reports. In 2002, the SEC issued the 34 Act Order permitting companies normally audited by Arthur Andersen LLP,[1] an accounting firm, to file unaudited financials with their annual and quarterly reports with the SEC. 34 Act Order, SEC Release No. 45589, 2002 WL 417359 (Mar. 18, 2002). The SEC concurrently promulgated Rule 19a-1, titled "Compliance with Section 314(a)(1) of the Trust Indenture Act for certain eligible indenture obligors,"[2] which states that

> [a]n "eligible indenture obligor" that files with the indenture trustee those Exchange Act reports filed with the Commission in accordance with the Release referred to in paragraph (b)(2) of this section has met its duty under Section 314(a)(1) of the Act (15 U.S.C. 77nn(a)(1)) to "file with the indenture all reports required to be filed with the Commission pursuant to Section 13 or Section 15(d) of the Securities Exchange Act of 1934."

17 C.F.R. § 260.19a-1(c). The Release referred to in paragraph (b)(2) of the section is the 34 Act Order. *See id.* § 260.19a-1(b)(2). The 34 Act Order allowed

---

[1] No party contends that ACS was a client of Arthur Andersen LLP.

[2] According to the rule, an "eligible indenture obligor" is an obligor that is required to file reports with the Commission pursuant to Section 13 or Section 15(d) of the Exchange Act and that may rely on the provisions of the 34 Act Order. 17 C.F.R. § 260.19a-1(b).

No. 08-10235

certain exemptions to companies audited by Arthur Andersen LLP, provided those companies met certain conditions. *See* 34 Act Order.

Wilmington Trust suggests that if the TIA imposed no time for filing SEC reports, there was no need to adopt Rule 19a-1 because issuers simply could have waited until they were able to obtain an audit, however long that may have taken, without violating Section 314(a)(1), and the only possible reason for the accommodation was that bond issuers unable to complete a timely audit due to Arthur Andersen's circumstances would have been late on the filings required of them by the TIA. Wilmington Trust also contends that the rule and circumstances surrounding it demonstrate that the SEC has recognized that the TIA requires timely filing of SEC reports. ACS suggests a different purpose for Rule 19a-1, stating that it simply recognizes that a report without audited financials is not the type of report required by the Exchange Act, but if a filer takes advantage of the 34 Act Order exemption and forwards to the trustee reports filed under the 34 Act Order, the filer has complied with § 314(a)(1).

After Arthur Andersen LLP was indicted, the SEC adopted rules "to assure a continuing and orderly flow of information to investors and the U.S. capital markets and to minimize any potential disruptions" as a result of the indictment. Requirements for Arthur Andersen LLP Auditing Clients, SEC Release No. 2018, 2002 WL 417378 (Mar. 18, 2002). The circumstances surrounding Rule 19a-1 thus indicate that the rule was clarifying that companies potentially affected by the indictment of Arthur Andersen LLP may file unaudited financials as opposed to audited financials. The TIA does not impose any independent obligation timely to file reports with the SEC, and Wilmington Trust's import of Rule 19a-1 to conclude otherwise ignores the limited purpose of Rule 19a-1.

Wilmington Trust also seeks to rely on *Bank of New York v. BearingPoint, Inc.*, 824 N.Y.S.2d 752 (N.Y. Sup. Ct. 2006) (unpublished table decision), arguing

that this court should afford it "the weight due the only New York decision on point." Construction of § 314(a) is a matter of federal law, and we do not find *BearingPoint* to be persuasive. We agree with the reasoning of the Eighth Circuit and hold that § 314(a) of the TIA does not impose an independent obligation timely to file reports with the SEC. Rather, § 314(a) requires ACS to provide copies of reports that are actually filed with the SEC.

### B. *The Indenture*

#### i. Indenture § 4.03

Wilmington Trust's other arguments center on the Indenture. Under New York law, "[t]he words and phrases used by the parties must, as in all cases involving contract interpretation, be given their plain meaning." *Brooke Group Ltd. v. JCH Syndicate 488*, 87 N.Y.2d 530, 534 (N.Y. 1996) (citing *Levine v. Shell Oil Co.*, 28 N.Y.2d 205, 211 (N.Y. 1971)). "[C]ourts may not fashion a new contract under the guise of contract construction; rather, they are required to discern the intent of the parties, to the extent that the parties evidenced what they intended by what they wrote." *Slatt v. Slatt*, 64 N.Y.2d 966, 967 (N.Y. 1985) (internal quotation marks and citations omitted).

At least one New York state court has construed an indenture provision similar to the provision at issue in this case. In *BearingPoint*, the court considered the following provision:

> [T]he Company shall file with the Trustee, within fifteen days after it files such annual and quarterly reports, information, and documents and other reports with the SEC, copies of its annual report and of the information, documents and other reports (or copies of such portions of any of the foregoing the SEC may by rules and regulations prescribe) which the Company is required to file with the SEC pursuant to Section 13 or 15(d) of the Exchange Act. The Company shall comply with the other provisions of TIA Section 314(a).

No. 08-10235

*BearingPoint*, 2006 WL 2670143, at *2. The court rejected BearingPoint's argument that it did not breach the indenture by failing to provide the trustee with timely SEC filings. The court stated that the provision "unambiguously obligates BearingPoint to make the required SEC filings and to provide copies of them to the Trustee," and BearingPoint's "tortured parsing" of the provision vitiated the clear purpose of the indenture to provide information to investors so they could protect their investments. *Id.* at *7. In making that determination, the court focused on the following phrases in the indenture provision: "[T]he Company **shall** file with the Trustee . . . copies of its annual reports and of the information, documents, and other reports . . . which the Company is **required** to file with the SEC pursuant to Section 13 or 15(d) of the Exchange Act." *Id.* (emphasis and omissions in original).

The Eighth Circuit, however, rejected *BearingPoint*"s parsing of the indenture provision.

> The [*BearingPoint*] court's analysis focused on the mandatory language of the indenture but did not distinguish between two distinct duties: one to file reports with the SEC in the first instance and another to forward copies of the reports to the trustee. More importantly, the court did not consider any timing issues and simply eliminated the phrase "within 15 days after it files such . . . reports . . . with the SEC," replacing it with a set of ellipses.

*UnitedHealth*, 548 F.3d at 1129-30 (omissions in original). The court in *UnitedHealth* did not set out the full text of the pertinent indenture provision in that case, but it stated its essence as follows: "the Company shall cause copies of . . . financial reports . . . which the Company is then required to file with the Commission pursuant to Section 13 or 15(d) of the Exchange Act to be filed with the Trustee . . . within fifteen days of filing with the Commission." *Id.* at 1128 (omissions in original). The Eighth Circuit, in a matter of first impression, held that the plain meaning of the indenture provision imposed no independent

No. 08-10235

obligation timely to file SEC reports. The court emphasized that "the plain language of [the indenture provision] makes clear that any duty actually to file the reports is imposed pursuant to Section 13 or 15(d) and *not* pursuant to the indenture itself." *Id.* at 1128-29 (internal quotation marks omitted). The court further explained the "then required to file" language:

> [T]he phrase "then required to file" is part of a longer clause introduced by the relative pronoun "which." The antecedent of "which" is clearly and unambiguously the word "reports." Thus, as a simple matter of syntax, the phrase "then required to file" modifies the word "reports" and indicates *which* reports are subject to § 504(i)'s terms. Just as clearly and just as unambiguously, the phrase "within fifteen days of filing with the Commission" modifies "shall cause . . . to be filed" and indicates *when* § 504(i)'s commands must be fulfilled.

*Id.* at 1128 (omission in original).

We find *UnitedHealth*'s reasoning persuasive. In this case, § 4.03 of the Indenture provides in part that "[ACS] shall file with the Trustee, within 15 days after it files the same with the SEC, copies of the annual reports . . . that [ACS] is required to file with the SEC pursuant to Section 13 or 15(d) of the Exchange Act." The unambiguous language of § 4.03 does not impose an independent obligation actually timely to file reports with the SEC. Rather, the phrase "that [ACS] is required to file" indicates those reports copies of which ACS is required to file with the Trustee. "[W]ithin 15 days after it files the same with the SEC" designates the time in which to file the reports with the Trustee. At best, the provision anticipates that ACS "is required to file" reports with the SEC pursuant to Section 13 or 15(d), but the provision neither incorporates the SEC's timing requirements nor imposes a deadline by which ACS must actually file the reports. We therefore hold that § 4.03 of the Indenture does not impose an obligation timely to file reports with the SEC.

No. 08-10235

ii. Alleged Condition Precedent

Wilmington Trust also contends that ACS cannot take advantage of its failure to fulfill its statutory obligation timely to file reports with the SEC to argue that it has not breached its obligation to provide the Trustee with the required reports. ACS argues that in the absence of a deadline in § 4.03 for filing with the SEC, ACS did not fail to perform under the Indenture. We find no condition precedent timely to file reports with the SEC. We have already held that neither the Indenture nor § 314 of the TIA requires ACS timely to file reports with the SEC. Wilmington Trust may not rely on ACS's failure to comply with statutory obligations not made part of the parties' contract to argue that ACS breached its contractual obligation. *See Camp Kennybrook Inc. v. Kuller*, 632 N.Y.S.2d 874, 875 (N.Y. App. Div. 1995) ("While plaintiff assumed a duty of care and supervision over Max, . . . , such duty is imposed of law independent of and extraneous to the contract . . . . Accordingly, plaintiff had no contractual or quasi-contractual duty to care for and supervise Max.") (citations omitted); *see generally Nuzzi Family Ltd. Liability Co. v. Nature Conservancy, Inc.*, 758 N.Y.S.2d 364, 365 (N.Y. App. Div. 2003) (rejecting time of the essence argument and stating that "[c]ontrary to the plaintiff's contention, the contract did not contain a condition precedent that its validity or the plaintiff's performance under the contract required its assignment to the DEC by a date certain") (citations omitted)

IV.    CONCLUSION

Because we hold that neither § 314 of the TIA nor the Indenture requires ACS timely to file reports with the SEC, we need not address the parties' arguments regarding the acceleration of the notes. For the foregoing reasons, we affirm the district court's judgment.

AFFIRMED.

Run Date: 5/7/2009                                                                                              Page:    3

# Mandates Due To Issue

### Due: 5/7/2009

**Case #:**   08-10235         Affiliated Computer v. Wilmington Trust Co

| FILED | TEXT |
|---|---|
| 04/21/2008 | Record on appeal filed.  Vol(s) of Electronic Pleadings: 6 [08-10235] |
| 06/05/2008 | Appellant/Petitioner Brief Filed |
| 06/05/2008 | Record Excerpts filed |
| 07/08/2008 | Appellee/Respondent Brief Filed |
| 07/29/2008 | Appellant/Petitioner Reply Brief Filed |
| 04/16/2009 | Published Opinion Filed |
| 04/20/2009 | Bill of Costs filed |